IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NIKKI VANMUIJEN,<br><br>        Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security<br><br>        Defendant. | **MEMORANDUM DECISION AND**<br>**ORDER REMANDING ALJ'S DECISION**<br><br><br>Case No. 2:15-cv-00355-EJF<br><br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff Nikki Vanmuijen filed this action asking the Court to remand or otherwise reverse the Administrative Law Judge's ("ALJ") decision denying her application for disability insurance benefits. In accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have consented to proceed before the undersigned Magistrate Judge. (ECF No. 14.) The ALJ determined that Ms. Vanmuijen did not qualify as disabled under 42 U.S.C. §§ 416(i) and 423(d) of the Social Security Act ("Act"). (Administrative R. ("R.") 22, ECF No. 8.) Having carefully considered the parties' memoranda, the complete record in the matter, and the arguments made at the hearing, the Court REMANDS the Commissioner's decision for a more comprehensive discussion of Adam Moore and Timandra Fawson's opinions, including their opinions regarding Ms. Vanmuijen's ability to function in social and work settings. To the extent the ALJ affords additional weight to these opinions, the ALJ should update his RFC findings and step-five analysis accordingly.

**FACTUAL AND PROCEDURAL HISTORY**

On February 23, 2012, Ms. Vanmuijen protectively filed a Title II application for a period of disability insurance benefits, alleging disability beginning on January 16, 2012. (R. 22.) Ms.

1

Vanmuijen alleges three impairments: "Learning Disabilities," "Emotional Conditions," and "Head Injuries." (R. 70.) The Commissioner of the Social Security Administration ("Commissioner") denied Ms. Vanmuijen's application on June 25, 2012, and again upon reconsideration on September 17, 2012. (R. 22.) Thereafter, on October 20, 2012, Ms. Vanmuijen requested a hearing before an ALJ. (R. 22.) On December 2, 2013, Ms. Vanmuijen appeared and testified at the hearing. (R. 22.) Kenneth A. Lister, an impartial vocational expert ("VE"), and Dr. James Ottesen, Ph.D. in Psychology, also appeared and testified at the hearing. (R. 22.) On December 16, 2013, the ALJ found Ms. Vanmuijen not disabled under 42 U.S.C. §§ 416(i) and 423(d). (R. 41.) On March 23, 2015, the Appeals Council denied Ms. Vanmuijen's request for review. (R. 1.)

Based on the five-step sequential evaluation process, the ALJ found Ms. Vanmuijen did not engage in substantial gainful activity on or after the alleged onset date at step one. (R. 24.) While the ALJ found Ms. Vanmuijen's cognitive disorder (due to a remote history of traumatic head injury stemming from a car accident at age eighteen) constituted a severe impairment, he found Ms. Vanmuijen did not have an impairment, or combination of impairments, that met or medically equaled one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 24.) In step four, the ALJ found Ms. Vanmuijen possessed the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels" but that she could only perform unskilled work "due to moderate restriction in concentration, persistence, or pace." (R. 26.) The ALJ further found Ms. Vanmuijen could not perform her past relevant jobs because they exceed her mental RFC. (R. 40.) Finally, the ALJ found at step five that "[c]onsidering [Ms. Vanmuijen's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could perform." (R. 41.) As a result, the

ALJ concluded that Ms. Vanmuijen does not qualify as disabled within the meaning of the Act. (R. 41.)

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of a final decision of the Commissioner. Where the Appeals Council denies review, the ALJ's decision becomes the Commissioner's final decision for purposes of review. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). The Court reviews the Commissioner's decision to determine whether the record as a whole contains substantial evidence in support of the Commissioner's factual findings and whether the Commissioner applied the correct legal standards. 42 U.S.C. §405(g); *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Adequate, relevant evidence that a reasonable mind might accept to support a conclusion constitutes substantial evidence, and "[e]vidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). The Commissioner's findings shall stand if supported by substantial evidence. 42 U.S.C. § 405(g).

In addition to a lack of substantial evidence, the Court may reverse where the Commissioner uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thompson v. Sullivan*; 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

## DISCUSSION

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

3

than 12 months." 42 U.S.C. § 423(d)(1)(A). Moreover, the Act considers an individual disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In determining whether a claimant qualifies as disabled within the meaning of the Act, the SSA employs a five-part sequential evaluation. *See* 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-53 (10th Cir. 1988); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The analysis evaluates whether:

   (1) The claimant presently engages in substantial gainful activity;
   (2) The claimant has a medically severe physical or mental impairment or impairments;
   (3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which preclude substantial gainful activity;
   (4) The impairment prevents the claimant from performing his or her past work; and
   (5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

*See* 20 C.F.R. § 404.1520. The claimant has the initial burden of establishing the disability in the first four steps. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other work existing in the national economy. *Id.*

I. **The ALJ Erred by Failing to Evaluate and Weigh Adam Moore and Timandra Fawson's Opinions Properly.**

Ms. Vanmuijen argues the ALJ failed to evaluate the opinions of Adam Moore and Timandra Fawson properly, both of whom met with Ms. Vanmuijen for several sessions regarding her mental health. (Pl.'s Opening Br. ("Opening") 8-10, ECF No. 17; R. 326, 330.) Dr. Moore and Ms. Fawson each wrote letters summarizing their therapy sessions with Ms.

Vanmuijen on August 13, 2012 and September 18, 2012 respectively. (R. 326, 330.) Ms. Vanmuijen argues that the ALJ erred by failing to evaluate Dr. Moore and Ms. Fawson's opinions according to 20 C.F.R. § 404.1527 or explain what weight he ultimately assigned them. (Opening 9-10, ECF No. 17.) Ms. Vanmuijen furthers alleges that the ALJ failed to use Dr. Moore and Ms. Fawson's opinions in evaluating other record evidence, including the opinions of Dr. James Ottesen. (*Id.* at 9-15.) The Commissioner appears to argue that the ALJ did not have to assign weight to Dr. Moore and Ms. Fawson's opinions. (Def.'s Answer Br. ("Def.'s Br.") 16-17, ECF No. 20.)

The Code of Federal Regulations (the "Regulations") requires an ALJ to evaluate every medical opinion, regardless of its source, using the following factors: Length and frequency of the examining relationship, nature and extent of the treatment relationship, supportability with relevant evidence, consistency with the record, specialization, and any other factors brought to the ALJ's attention that tends to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6). Only opinions from "acceptable medical sources" may constitute "medical opinions." SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006); 20 C.F.R. § 404.1527(a)(2). Acceptable medical sources include licensed physicians, licensed or certified psychologists, and, for limited purposes only, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. *See* 20 C.F.R. § 404.1513(a)(1)-(5). Examples of non-acceptable medical sources include "nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists." *Id.* § 404.1513(d)(1).

This distinction has significance because only acceptable medical sources can qualify as treating sources, and treating sources may carry controlling weight. SSR 06-03p at *2. In *Watkins v. Barnhart*, the Tenth Circuit delineated the process for evaluating a treating source

5

opinion. 350 F.3d 1297 (10th Cir. 2003). First, the ALJ should determine whether the opinion deserves controlling weight by determining whether the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at 1300 (internal quotations omitted); 20 C.F.R. § 404.1527(c). If not, the ALJ need not give the opinion controlling weight. *Watkins*, 350 F.3d at 1300. If the ALJ finds the opinion well supported, then the ALJ also must confirm that the opinion "is consistent with other substantial evidence in the record." *Id.* If so, then the ALJ must give the opinion controlling weight. *Id.* Even if the ALJ finds the treating source opinion does not deserve controlling weight, the ALJ must still weigh the opinion using the 20 C.F.R. § 404.1527 factors. *Id.* After considering these factors, the ALJ must give "good reasons" in his decision for the weight he ultimately assigns the opinion. *Id.* at 1301.

Dr. Moore's letter indicates that he and Ms. Vanmuijen met for nine sessions between September 22, 2011 and January 12, 2012. (R. 326.) In the letter, Dr. Moore identified his qualifications as "Ph.D., LMFT." (R. 326.) LMFTs, or Licensed Marriage and Family Therapists, may not qualify as acceptable medical sources. *See* 20 C.F.R. § 404.1513(d)(1); *Zaricor-Ritchie v. Astrue*, 452 F. App'x 817, 819-20 (10th Cir. 2011) (unpublished). The Commissioner argues that Dr. Moore does not qualify as an acceptable medical source. (Def.'s Br. 17, ECF No. 20.) The ALJ does not indicate what kind of source he thinks Dr. Moore constitutes. (R. 32-33.) Dr. Moore indicated he had a Ph.D., suggesting he may qualify as an acceptable medical source, if, for instance, his Ph.D. pertains to medicine or psychology. *See* 20 C.F.R. § 404.1513(a)(1)-(2) (noting licensed physicians and psychologists qualify as acceptable medical sources). If Dr. Moore does qualify as an acceptable medical source, his opinion might deserve controlling weight. *See Watkins*, 350 F.3d at 1300. Thus, the ALJ erred in failing to explain whether Dr. Moore constituted an acceptable medical source and why.

The Commissioner proceeds to argue that the ALJ did not need to assign weight to Dr. Moore's opinions because Dr. Moore did not state any opinions. (Def.'s Br. 17, ECF No. 20.) Dr. Moore's letter begins by summarizing Ms. Vanmuijen's self-reported difficulties with working at Intermountain Healthcare and finding a new job as a result of her mental limitations. (R. 326.) Because this portion of the letter represents merely a narrative summary of Ms. Vanmuijen's own statements, it does not constitute an "opinion." *See* SSR 06-03p at *5 (noting opinions include "symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions"); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012). Hence, the ALJ did not have to assign a weight to this portion of the letter. *Keyes-Zachary*, 695 F.3d at 1164. However, later statements in the letter qualify as "opinions." For instance, Dr. Moore noted that Ms. Vanmuijen "appeared to have a hard time reading social cues and struggled to maintain social relationships," which "may have impacted her ability to successfully perform in a work environment." (R. 326.) Furthermore, Dr. Moore opined that "[t]hings she expressed in our sessions seemed to indicate a sense of isolation at work and in other situations." (R. 326.) Thus, the ALJ erred in failing to analyze the opinions and assign weight.

Even with the ALJ failing to weigh Dr. Moore's opinions, the Commissioner contends the ALJ committed harmless error because the ALJ's decision "allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." SSR 06-03p at *6; (Def.'s Br. 17, ECF No. 20.) The Commissioner argues that the ALJ's decision makes clear he gave little to no weight to such opinions because "had [he] assigned any greater weight, he might not have found Plaintiff had the mental RFC that she did." (Def.'s Br. 17, ECF No. 20.) Ms. Vanmuijen disagrees with this reasoning, calling it "circular." (Pl.'s Reply Br. ("Reply") 2, ECF No. 21.)

In *Keyes-Zachary*, the Tenth Circuit employed a similar rationale espoused by the Commissioner to uphold an ALJ's failure to assign a weight to a therapist's opinion. *Keyes-Zachary*, 695 F.3d at 1164. There, the claimant's therapist assigned her a particularly low Global Assessment of Functioning (GAF) score that did not comport with other GAF evidence in the record. *Id.* The VE testified that GAF scores in this range would eliminate all jobs. *Id.* The ALJ did not assign a particular weight to this conflicting GAF evidence. *Id.* Nonetheless, the Tenth Circuit held the ALJ's analysis sufficient because "it is obvious that the ALJ gave little to no weight to [the therapist's] GAF opinion. Simply put, had he assigned great weight to the low GAF score, he would not have developed the mental RFC for Ms. Keyes-Zachary that he did." *Id.* Thus, the Tenth Circuit concluded any error on the ALJ's part in failing to assign a particular weight to the therapist's opinion qualified as harmless. *Id.* at 1164-65.

Unlike *Keyes-Zachary*, however, the ALJ's discussion of Dr. Moore's opinions here does not allow the Court to follow the ALJ's reasoning. The crux of the *Keyes-Zachary* court's reasoning rested on the inference that the ALJ's analysis made clear he did not give the therapist's opinion more than little weight because had the ALJ done so, he would not have arrived at the mental RFC the way he did. *Id.* at 1164. Here, the ALJ did not analyze Dr. Moore's opinions. (*See* R. 32-33.) While the ALJ found Ms. Vanmuijen suffered moderate restrictions in concentration, persistence, or pace and limited her to unskilled work as a result, (R. 26), the Court cannot tell if that limitation meets Ms. Vanmuijen's limitations because the Court does not know what the ALJ thought of Dr. Moore's opinions that Ms. Vanmuijen had difficulty functioning in work settings. Moreover, Dr. Moore's opinions indicate that Ms. Vanmuijen has difficulty interacting with others in social and work settings, an issue not necessarily resolved with a restriction to unskilled work. (*See* R. 326); *Groberg v. Astrue*, 505 F.

App'x 763, 770 (10th Cir. 2012) (unpublished) ("A limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a claimant's mental impairments.") (citing *Chapo v. Astrue,* 682 F.3d 1285, 1290 n.3 (10th Cir. 2012)). The ALJ's failure to explain his reasoning regarding Dr. Moore's opinions leaves this Court unable to determine whether or how the ALJ considered Dr. Moore's opinions in reaching the RFC. Thus, the ALJ's legal error does not constitute harmless error.

Regardless of whether Dr. Moore qualifies as an acceptable medical source, the ALJ should have evaluated and weighed Dr. Moore and Ms. Fawson's opinions using the § 404.1527(c) factors because both qualify as non-acceptable medical sources at a minimum. SSR 06-03p at *4-5. While the § 404.1527(c) factors explicitly apply only to medical opinions from acceptable medical sources, these factors represent "basic principles" that apply to opinions from non-acceptable medical sources and other sources as well. *Id.* at 4. Moreover, the ALJ should also "explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *6.

Ms. Fawson's letter indicated that she and Ms. Vanmuijen met four times between January 19, 2012 and February 9, 2012. (R. 330.) Ms. Fawson stated her qualification as "LMFT." (R. 330.) Like Dr. Moore's letter, Ms. Fawson's letter begins by summarizing Ms. Vanmuijen's reported concerns before opining that the issues Ms. Vanmuijen raised during their sessions "indicate that her ability to function in both work settings as well as interpersonally is lacking." (R. 330.) Ms. Fawson further opined that Ms. Vanmuijen's goals "are unrealistic given

9

her limitations" and that her ability to function academically and socially "continues to lag behind the norm despite her real effort." (R. 330.)

The ALJ's discussion of Ms. Fawson's letter, like his discussion of Dr. Moore's letter, merely summarizes its content without any evaluation or weighing of its significance using the § 404.1527(c) factors. (*See* R. 32-33.) Unlike *Keyes-Zachary*, 695 F.3d at 1163-65, where the ALJ merely failed to assign a weight to the therapist's opinion, the ALJ here failed to analyze Ms. Fawson's opinions at all. As explained above, the total lack of analysis precludes the Court from following the ALJ's reasoning because the Court cannot determine how the ALJ evaluated Ms. Fawson's opinions regarding Ms. Vanmuijen's difficulties functioning in social and work settings. Because Ms. Fawson's letter, like Dr. Moore's letter, suggests work limitations not necessarily addressed by an unskilled work limitation, the Court finds the ALJ erred in failing to analyze Ms. Fawson's opinions, and the Court cannot find that error harmless. *See Groberg*, 505 F. App'x at 770.

Ms. Vanmuijen further contends that the ALJ compounded these errors by failing to consider Dr. Moore and Ms. Fawson's opinions when analyzing the other medical source opinions in the record. (Opening 15, ECF No. 17.) Other record evidence supports Dr. Moore and Ms. Fawson's opinions that Ms. Vanmuijen has difficulty interacting with others. Helen Kjolby, one of the state agency physicians, stated Ms. Vanmuijen could only have "limited public/social contact." (R. 73.) During his 2007 evaluation of Ms. Vanmuijen, Dr. Ottesen also opined that Ms. Vanmuijen was "very shy, bashful, and easily embarrassed in social situations" and that she has "conflict[s] with authority figures." (R. 354.) In spite of Dr. Kjolby and Dr. Ottesen's medical opinions, the ALJ found that Ms. Vanmuijen "demonstrated no more than mild restriction in social functioning," citing lay testimony that Ms. Vanmuijen babysat her sister's

children,[1] maintained adequate relationships with family members, went out with friends to movies, and interacted appropriately with medical providers. (R. 38.) Had the ALJ considered the opinions of Dr. Moore and Ms. Fawson, he may have found them supportive of Dr. Ottesen and Dr. Kjolby's opinions. If he did, he may have found work restrictions to accommodate social functioning necessary, and these restrictions may have eliminated jobs Ms. Vanmuijen could perform. Thus, the ALJ's failure in the first instance, rather than being harmless, actually snowballs, making the remainder of the opinion suspect.

Furthermore, as part of her appeal of the ALJ's decision, Ms. Vanmuijen supplied treatment notes from Dr. Moore and Ms. Fawson to the Appeals Council. (R. 5, 375-424.) Thus, on remand, the ALJ will have treatment notes to assist his evaluation and weighing of Dr. Moore and Ms. Fawson's opinions. Given all of the uncertainty left by the ALJ's decision and the lack of clear reasoning, the Court finds the ALJ's failure to weigh Dr. Moore and Ms. Fawson's opinions does not constitute harmless error.

## CONCLUSION

For the foregoing reasons, the Court REMANDS the ALJ's decision for a more complete analysis and weighing of Dr. Moore and Ms. Fawson's opinions. The ALJ should then update his RFC findings and step-five analysis accordingly.

---

[1] The ability to babysit her sister's children does not necessarily indicate Ms. Vanmuijen has adequate social functioning. Ms. Vanmuijen's sister stated her children are in the sixth grade and that Ms. Vanmuijen only watched them while she was at work, after school. (R. 235, 237.) As Ms. Vanmuijen's counsel pointed out during the hearing, the SSA Program Operations Manual System (POMS) indicates that unskilled work requires the ability to "maintain attention for extended periods of 2-hour segments." Soc. Sec. Admin. Program Operations Manual System § DI 25020.010, § B(3). The record does not make clear whether Ms. Vanmuijen's babysitting or any of her other regular activities continue for two or more hours. Without such information the Court finds assessing whether substantial evidence supports the ALJ's finding that Ms. Vanmuijen can pay attention for extended periods of two-hour segments impossible.

DATED this  5th   day of July, 2016.

                                            BY THE COURT:

                                            EVELYN J. FURSE
                                            United States Magistrate Judge